1
2
3
4
5
6
7
8
9

QUINN EMANUEL URQUHART &
SULLIVAN, LLP
  Claude M. Stern (Bar No. 96737)
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California 94065
Telephone: (650) 801-5000
Facsimile:  (650) 801-5100
claudestern@quinnemanuel.com
  Brian E. Mack (Bar No. 275086)
50 California Street, 22nd Floor
San Francisco, California 94111-4788
Telephone:  (415) 875-6600
Facsimile:   (415) 875-6700
brianmack@quinnemanuel.com

Attorneys for Plaintiff Mitek Systems, Inc.

10
11

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

12
13
14
15
16
17
18
19

| | |
|---|---|
| Mitek Systems, Inc., | Case No. _____ |
| Plaintiff, | **COMPLAINT FOR DECLARATORY JUDGMENT** |
| vs. | **JURY TRIAL DEMANDED** |
| United Services Automobile Association, | Date:      November 1, 2019 |
| Defendant. | |

20
21
22
23
24
25
26
27
28

Plaintiff Mitek Systems, Inc. ("Mitek" or "Plaintiff"), for its Complaint against Defendant United Services Automobile Association ("USAA" or "Defendant"), hereby alleges as follows:

## NATURE OF THE ACTION

1.      This is a declaratory judgment action arising under the patent laws of the United States, Title 35 of the United States Code.   This action seeks a determination that Mitek does not infringe any valid or enforceable claim of United States Patent Nos. 8,699,779 ("the '779 Patent"); 9,336,517 ("the '517 Patent");

9,818,090 ("the '090 Patent"); and 8,977,571 ("the '571 patent") (collectively, "the Patents-in-Suit").

2.     USAA's patent enforcement and litigation campaign has placed a cloud over Mitek's products and services; has accused Mitek and Mitek's customers of infringing the Patents-in-Suit; and has created a justiciable controversy between Mitek and USAA.

## THE PARTIES

3.     Plaintiff Mitek is a Delaware corporation, having its international headquarters and principal place of business at 660 B Street, Suite 100, San Diego, CA 92101.  Part of Mitek's business includes licensing a remote image capture SDK called MiSnap™ (part of Mitek's Mobile Deposit® product offering) to financial institutions for incorporation within their mobile banking applications.

4.     On information and belief, Defendant USAA is a reciprocal inter-insurance exchange and unincorporated association organized under the laws of the State of Texas having its principal place of business at 9800 Fredericksburg Road, San Antonio, Texas 78288.  USAA regularly conducts business throughout the United States including within this District.

## JURISDICTION AND VENUE

5.     This civil action arises under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, and the patent laws of the United States, 35 U.S.C. § 1 *et seq*.

6.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1338(a), 2201 and 2202.

7.     This Court has general and specific personal jurisdiction over USAA.

8.     Starting in early 2017, USAA launched an aggressive patent licensing and enforcement campaign relating to the Patents-in-Suit targeting California financial institutions.  On information and belief, sometime in 2017, USAA retained a law firm, Epicenter Law, PC ("Epicenter"), which is based in the San Francisco Bay Area within this District, to conduct this extensive campaign.  On information

and belief, Epicenter, on behalf of USAA, sent over 1,000 patent licensing demand letters to financial intuitions across the country, most of which are Mitek customers. These letters explained that "USAA has asked Epicenter Law to approach financial institutions to offer a license, on reasonable terms, as fair compensation for the continued use of this patent-protected innovation."  Ex. A.  On information and belief, at least some of these letters included one or more "claim charts" detailing Mitek's customers' infringement of one or more of the Patents-in-Suit as well as a "Patent List" identifying one or more of the Patents-in-Suit.  *Id.*

9.     USAA intentionally and purposefully directed patent enforcement activities relating to the Patents-in-Suit into California and this District.  For example, on information and belief, USAA, through Epicenter, sent several of the aforementioned letters to financial institutions within California and within this District.  For example, USAA sent a patent licensing demand letter to one of Mitek's largest customers, Wells Fargo Bank, in San Francisco, California.

10.    On information and belief, USAA, through Epicenter, also initiated numerous telephone calls and in-person meetings with financial institutions within California and within this District seeking to enforce the Patents-in-Suit.  As just one example, in May and June of 2018, representatives of Epicenter held in-person meetings with representatives of Wells Fargo Bank in San Francisco, California relating to USAA's patent licensing campaign and the Patents-in-Suit.  During those meetings, on information and belief, USAA, through Epicenter, discussed the infringement of the Patents-in-Suit and provided claim charts describing the alleged infringement to the representatives of Wells Fargo Bank.

11.    In June 2018, USAA sued Wells Fargo Bank for patent infringement in the Eastern District of Texas alleging infringement of the Patents-in-Suit based at least in part on technology provided to Wells Fargo Bank by Mitek.  In the First Amended Complaint in that action, USAA specifically referenced Mitek's technology, including Mitek's MiSnap™.  Ex. B, "Amended Complaint," *USAA v.*

1   *Wells Fargo Bank*, No. 2:18-cv-00245-JRG ("Wells Fargo lawsuit"), Dkt. 54 ¶ 29

2   (E.D. Tex. Nov. 28, 2018).  According to the Amended Complaint, Wells Fargo Bank

3   acknowledged that Mitek "provides its capture control software" that is accused, at

4   least in part, of infringing the Patents-in-Suit.  *Id.* at ¶ 36.  Mitek's software and

5   technology is directly implicated in the alleged infringement.

6        12.    In the Amended Complaint, USAA also implicitly accused Mitek of

7   encouraging and contributing to the infringement of each of the Patents-in-Suit by

8   supplying its MiSnap™ technology to financial institutions for incorporation within

9   their mobile banking applications.  On information and belief, in the Wells Fargo

10   lawsuit, USAA has accused Wells Fargo Bank of infringing each of the Patents-in-

11   Suit at least in part by virtue of Wells Fargo Bank's use of Mitek's software and

12   technology, including MiSnap™.  USAA has also sought and received, in the Wells

13   Fargo lawsuit, documents and source code from Mitek and deposition testimony from

14   several Mitek witnesses regarding the operation of MiSnap™.  On information and

15   belief, USAA is relying on these documents, source code, and deposition testimony

16   in order to show direct infringement of the Patents-in-Suit by Wells Fargo's remote

17   deposit application that incorporates MiSnap™.  On information and belief, USAA

18   also alleged in the Wells Fargo lawsuit that the accused Mitek technology being used

19   by Wells Fargo has no substantial non-infringing uses.  Mitek therefore has a real

20   and substantial apprehension of imminent litigation between Mitek and USAA for

21   direct infringement, inducement, and contributory infringement of the Patents-in-

22   Suit.

23        13.    Mitek has various contractual relationships with its customers, including

24   OEM Agreements, relating to MiSnap™ and Mitek's Mobile Deposit® product

25   offering.  These agreements include indemnification provisions relating to actual or

26   alleged patent infringement by Mitek's technology.  In response to USAA's massive

27   patent enforcement and letter writing campaign, Mitek has received demands for

28   indemnification from its customers and suppliers pursuant to these agreements.  On

1    information and belief, USAA sent its patent licensing demand letters to Mitek's

2    customers knowing that Mitek's customers would forward those letters to Mitek and

3    seek indemnification for infringement of the Patents-in-Suit.

4        14.   USAA has initiated litigation with Mitek in the past, raising Mitek's

5    apprehension of imminent litigation surrounding the Patents-in-Suit.  In 2012, USAA

6    initiated a lawsuit against Mitek for trade secret misappropriation and declaratory

7    judgment of non-infringement and invalidity of certain Mitek patents in the Western

8    District of Texas, *USAA v. Mitek Systems, Inc.*, No. 5:12-cv-00282-FB (W.D. Tex.).

9    At least by conducting an aggressive and extensive patent licensing campaign

10   relating to the Patents-in-Suit, sending hundreds of patent licensing demand letters to

11   Mitek customers knowing those customers would forward the letters to Mitek and

12   seek indemnification, and initiating patent infringement litigation against a major

13   Mitek customer over technology provided to that customer by Mitek, there is a

14   substantial controversy between Mitek and USAA, who have adverse legal interests,

15   of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

16       15.   This court has general personal jurisdiction over USAA at least because

17   of USAA's continuous and systematic contacts within this District, including

18   conducting substantial and regular business therein through its extensive property

19   and casualty insurance business conducted within this District, through its vast

20   network of ATMs within this District, and through its mail, internet, and mobile-

21   device based banking services carried out within this District.

22       16.   For example, on information and belief, USAA derives substantial

23   revenue from California residents and is licensed to conduct business and sell

24   property and casualty insurance, among other products, within California and this

25   District.  On information and belief, USAA owns or operates several companies

26   licensed in California that conduct regular and systematic business within California

27   and this District, such as USAA Casualty Insurance Company, USAA General

28

Indemnity Company, Garrison Property and Casualty Insurance Company, and USAA Financial Insurance Agency.

17.   On information and belief, USAA owned and operated at least two places of business within California, a USAA Financial Center at 2431 Fenton Parkway in San Diego, California and a USAA Financial Center at 2178 Vista Way in Oceanside, California.   On information and belief, these centers provide or provided face-to-face personal service to USAA customers residing in California.

18.   USAA actively invests in many Bay Area companies and, on information and belief, retains an equity and/or controlling interest in these companies.   USAA's investment portfolio includes significant equity and/or control in at least Coinbase and Socotra, both headquartered in San Francisco, California. USAA also conducts substantial and systematic business in California through its limited partnerships with many California residents, including at least Commerce Ventures, headquartered in San Francisco, California; InCube Ventures, headquartered in San Jose, California; Montage Ventures, headquartered in Palo Alto, California; and the Entrepreneurs' Fund, headquartered in San Mateo, California.

19.   USAA has intentionally invoked and purposefully availed itself to the jurisdiction of California courts and voluntarily submitted to jurisdiction in California on numerous occasions in the past.   For example, USAA has initiated claims against the United States of America and others using courts in California and this District.   *See*, *e.g.*, *USAA Casualty Insurance Company v. United States*, Case No. 3:2005-cv-01680 (N.D. Cal.); *United Services Automobile Association v. Franke Consumer Products, Inc.*, Case No. 5:11-cv-05430 (N.D. Cal.); *USAA Investment Management Company et al v. Henry et al.*, Case No. 5:18-00137 (N.D. Cal.); *USAA Casualty Insurance Company v. Broan-Nutone LLC*, Case No. 2:18-cv-01656 (C.D. Cal.); *USAA Investment Management Company et al v. Hodges et al.*, Case No. 1:18-cv-00605 (E.D. Cal.); *USAA v. United States of America et al.*, Case No. 3:14-cv-

COMPLAINT FOR DECLARATORY JUDGMENT

01669-AJB-JMA (S.D. Cal.); *USAA et al. v. United States of America et al*., Case No. 3:15-cv-01144-AJB-KSC (S.D. Cal.); *USAA et al. v. United States of America*, Case No. 3:09-cv-01009-L-POR (S.D. Cal.); *USAA et al. v. United States of America*, Case No. 3:02-cv-02078-JM-POR; *USAA et al. v. The United States Bureau of Land Management et al*., Case No. 3:14-cv-01437-AJB-KSC (S.D. Cal.); *USAA v. North American Van Lines, Inc. et al*., Case No. 3:96-cv-00753-BTM-JFS (S.D. Cal.). USAA has also voluntarily consented to jurisdiction in California and this District. *See*, *e.g.*, *Sturm v. United Services Automobile Association et al*., Case. No. 3:12-cv-01810 (N.D. Cal.); *Langan v. United Services Automobile Association et al*., Case No. 3:13-cv-04994 (N.D. Cal.); *Yue v. 21st Century Insurance et al*., Case No. 5:10-cv-03634 (N.D. Cal.); *Hudson et al v. USAA Property and Casualty Insurance Company et al*., Case No. 3:11-cv-01057 (N.D. Cal.); *Koepsell v. USAA, et al*., Case No. 2:11-cv-01772 (E.D. Cal.); *Kane v. USAA et al.*, No. 3:17-cv-02581-JAH-AGS (S.D. Cal.); *Mattson v. USAA et al.*, Case No. 3:18-cv-00222-JM-KSC (S.D. Cal.); *Conover v. USAA Cas. Ins. Co. et al.*, Case No. 3:91-cv-01044-K-HRM (S.D. Cal.); *Bacino et al. v. USAA Cas. Ins. Co. et al.*, Case No. 3:08-cv-01239-DMS-RBB (S.D. Cal.); *Radcliffe v. USAA Cas. Ins. Co.*, Case No. 3:11-cv-00352-JM-BLM (S.D. Cal.); *Burns et al. v. USAA Cas. Ins. Co.*, Case No. 3:14-cv-02331-AJB-RBB (S.D. Cal.); *Braden v. USAA Cas. Ins. Co. et al.*, Case No. 3:15-cv-01707-JM-BLM (S.D. Cal.); *Lisicky et al. v. USAA Cas. Ins. Co. et al.*, Case No. 3:18-cv-01642-W-AGS (S.D. Cal.); *Brumfield, et al. v. USAA Cas. Ins. Co.*, Case No. 3:05-cv-02214-LAB-NLS (S.D. Cal.); *Deutz et al. v. USAA Cas. Ins. Co., Inc. et al.*, Case No. 3:16-cv-02096-LAB-RNB (S.D. Cal.); *LaVaut v. USAA Fed. Sav. Bank, et al.*, Case No. 3:01-cv-02047-BTM-NLS (S.D. Cal.); *Brewster v. USAA Fed. Sav. Bank et al.*, Case No. 3:10-cv-01633-JAH-BLM (S.D. Cal.); *Gugger v. USAA Fed. Sav. Bank et al.*, Case No. 3:17-cv-01518-AJB-AGS (S.D. Cal.); *Small et al. v. Travelers Prop. Cas. Co. of Am. et al.*, Case No. 3:08-cv-01160-BTM-WMC (S.D. Cal.); *Earlywine v. USAA Life Ins. Co. et al.*, Case No. 3:17-cv-00328-CAB-NLS (S.D. Cal.).

COMPLAINT FOR DECLARATORY JUDGMENT

20.     Venue is proper in the Northern District of California pursuant to 28 U.S.C. § 1391(b) and (c) at least because USAA regularly conducts business in this District, USAA is subject to personal jurisdiction in this District, and a substantial part of the events giving rise to the claim occurred in this District.

## INTRADISTRICT ASSIGNMENT

21.     For purposes of intradistrict assignment under Civil Local Rules 3-2(c) and 3-5(b), this Intellectual Property Action will be assigned on a district-wide basis.

## PATENTS-IN-SUIT

22.     The '779 Patent is entitled "Systems and Methods for Alignment of Check During Mobile Deposit," and issued on April 15, 2014.  A true and correct copy of the '779 Patent is attached hereto as Exhibit C.

23.     The '517 Patent is entitled "Systems and Methods for Alignment of Check During Mobile Deposit," and issued on May 10, 2016.  A true and correct copy of the '517 Patent is attached hereto as Exhibit D.

24.     The '571 Patent is entitled "Systems and Methods for Image Monitoring of Check During Mobile Deposit," and issued on March 10, 2015.  A true and correct copy of the '571 Patent is attached hereto as Exhibit E.

25.     The '090 Patent is entitled "Systems and Methods for Image and Criterion Monitoring During Mobile Deposit," and issued on November 14, 2017.  A true and correct copy of the '090 Patent is attached hereto as Exhibit F.

26.     USAA previously alleged in *USAA v. Wells Fargo Bank*, No. 2:16-cv-245 (E.D. Tex.) that it is the assignee of all right, title, and interest in the Patents-in-Suit.

## ACTS GIVING RISE TO THIS ACTION

27.     Plaintiff Mitek has been an innovator in mobile-imaging solutions that use mobile phones for check deposit, bill payments, and identity verification.  Mitek launched its remote deposit product for mobile phones—Mobile Deposit®—at least as early as January 2008.

28.     Mitek has continued to innovate and improve its remote deposit solution.  Mitek currently licenses MiSnap™, a patented mobile-capture SDK that enables an intuitive user experience and instant capture of quality images with a mobile or desktop device.  The process of capturing and optimizing an image can be used to enable remote check deposit, verify a customer's identity, increase transaction speed, improve image quality, and reduce abandonment rates.  Mitek's MiSnap™, after incorporated into a financial institution's remote banking application, streamlines the user experience by enabling users to capture quality images of their checks (as well as other important documentation) the first time.

29.     Defendant USAA distributes remote deposit capture products, called Deposit@Home® and Deposit@Mobile®, to its members.  On information and belief, USAA released its remote deposit product for mobile phones—Deposit@Mobile®—in the spring or summer of 2009.

30.     On information and belief, USAA has accused Wells Fargo Bank of infringing at least claim 1 of the '779 Patent by virtue of Wells Fargo Bank's use of Mitek's MiSnap™ and related remote deposit technology.  On information and belief, USAA has relied on certain MiSnap™ source code, documentation, and deposition testimony from Mitek witnesses in order to show the alleged infringement of at least claim 1 of the '779 Patent.  On information and belief, USAA alleges that Wells Fargo Bank specifically encourages its customers to use the accused Mitek's MiSnap™ and related remote deposit technology in an infringing manner.  On information and belief, USAA also alleges that the accused Mitek's MiSnap™ and related remote deposit technology have no substantial non-infringing uses.  Thus, Mitek and all of its MiSnap™ customers are presently faced with a substantial risk of litigation by USAA for allegedly infringing, either directly or indirectly, the '779 Patent.

31.     On information and belief, USAA has accused Wells Fargo Bank of infringing at least claim 1 of the '517 Patent by virtue of Wells Fargo Bank's use of

Mitek's MiSnap™ and related remote deposit technology.  On information and belief, USAA has relied on certain MiSnap™ source code, documentation, and deposition testimony from Mitek witnesses in order to show the alleged infringement of at least claim 1 of the '517 Patent.  On information and belief, USAA alleges that Wells Fargo Bank specifically encourages its customers to use the accused Mitek's MiSnap™ and related remote deposit technology in an infringing manner.  On information and belief, USAA also alleges that the accused Mitek's MiSnap™ and related remote deposit technology have no substantial non-infringing uses.  Thus, Mitek and all of its MiSnap™ customers are presently faced with a substantial risk of litigation by USAA for allegedly infringing, either directly or indirectly, the '517 Patent.

32.    On information and belief, USAA has accused Wells Fargo Bank of infringing at least claim 1 of the '571 Patent by virtue of Wells Fargo Bank's use of Mitek's MiSnap™ and related remote deposit technology.  On information and belief, USAA has relied on certain MiSnap™ source code, documentation, and deposition testimony from Mitek witnesses in order to show the alleged infringement of at least claim 1 of the '571 Patent.  On information and belief, USAA alleges that Wells Fargo Bank specifically encourages its customers to use the accused Mitek's MiSnap™ and related remote deposit technology in an infringing manner.  On information and belief, USAA also alleges that the accused Mitek's MiSnap™ and related remote deposit technology have no substantial non-infringing uses.  Thus, Mitek and all of its MiSnap™ customers are presently faced with a substantial risk of litigation by USAA for allegedly infringing, either directly or indirectly, the '571 Patent.

33.    On information and belief, USAA has accused Wells Fargo Bank of infringing at least claim 1 of the '090 Patent by virtue of Wells Fargo Bank's use of Mitek's MiSnap™ and related remote deposit technology.  On information and belief, USAA has relied on certain MiSnap™ source code, documentation, and

deposition testimony from Mitek witnesses in order to show the alleged infringement of at least claim 1 of the '090 Patent.  On information and belief, USAA alleges that Wells Fargo Bank specifically encourages its customers to use the accused Mitek's MiSnap™ and related remote deposit technology in an infringing manner.  On information and belief, USAA also alleges that the accused Mitek's MiSnap™ and related remote deposit technology have no substantial non-infringing uses.  Thus, Mitek and all of its MiSnap™ customers are presently faced with a substantial risk of litigation by USAA for allegedly infringing, either directly or indirectly, the '090 Patent.

34.    Thus, as described above, Mitek and all of its MiSnap™ customers are presently faced with a substantial risk of litigation by USAA for allegedly infringing each of the Patents-in-Suit.

**COUNT I**

**DECLARATORY JUDGMENT OF NON-INFRINGEMENT**

**OF U.S. PATENT NO. 8,699,779**

35.    Plaintiff realleges the foregoing paragraphs as if fully set forth herein.

36.    Mitek, through the manufacture, use, and/or sale of Mitek's MiSnap™ and related remote deposit technology, has not and does not infringe, induce infringement, or contribute to the infringement of any enforceable claim of the '779 patent, either literally or under the doctrine of equivalents.

37.    Mitek's customers' use of Mitek's MiSnap™ and related remote deposit technology has not and does not infringe, induce infringement, or contribute to the infringement of any enforceable claim of the '779 patent, either literally or under the doctrine of equivalents.

38.    For example, Mitek's MiSnap™ and related remote deposit technology do not infringe at least because they do not "determine whether the image of the check aligns with the alignment guide" or "automatically capture the image of the check when the image of the check is determined to align with the alignment guide,"

as required by claims 1 and 10 of the '779 patent.  In addition, Mitek has never had any intent to cause its customers to infringe the '779 patent.

39.     As a result of the acts described in the preceding paragraphs, there exists a controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

40.     A judicial declaration is necessary and appropriate so that Mitek and its customers may ascertain their rights regarding the '779 patent.

**COUNT II**

**DECLARATORY JUDGMENT OF NON-INFRINGEMENT**

**OF U.S. PATENT NO. 9,336,517**

41.     Plaintiff realleges the foregoing paragraphs as if fully set forth herein.

42.     Mitek, through the manufacture, use, and/or sale of Mitek's MiSnap™ and related remote deposit technology, has not and does not infringe, induce infringement, or contribute to the infringement of any enforceable claim of the '517 patent, either literally or under the doctrine of equivalents.

43.     Mitek's customers' use of Mitek's MiSnap™ and related remote deposit technology has not and does not infringe, induce infringement, or contribute to the infringement of any enforceable claim of the '517 patent, either literally or under the doctrine of equivalents.

44.     For example, Mitek's MiSnap™ and related remote deposit technology do not infringe at least because they do not "determine whether the at least one feature of the instrument aligns with the alignment guide" or "automatically capture information of the instrument when the at least one feature aligns with the alignment guide," as required by claims 1 and 10 of the '517 patent.  In addition, Mitek has never had any intent to cause its customers to infringe the '517 patent.

45.     As a result of the acts described in the preceding paragraphs, there exists a controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

46.     A judicial declaration is necessary and appropriate so that Mitek and its customers may ascertain their rights regarding the '517 patent.

### COUNT III

### DECLARATORY JUDGMENT OF NON-INFRINGEMENT
### OF U.S. PATENT NO. 8,977,571

47.     Plaintiff realleges the foregoing paragraphs as if fully set forth herein.

48.     Mitek, through the manufacture, use, and/or sale of Mitek's MiSnap™ and related remote deposit technology, has not and does not infringe, induce infringement, or contribute to the infringement of any enforceable claim of the '571 patent, either literally or under the doctrine of equivalents.

49.     Mitek's customers' use of Mitek's MiSnap™ and related remote deposit technology has not and does not infringe, induce infringement, or contribute to the infringement of any enforceable claim of the '571 patent, either literally or under the doctrine of equivalents.

50.     For example, Mitek's MiSnap™ and related remote deposit technology do not infringe at least because they do not "capture the image of the check [with/using] the camera when the image of the check [in the field of view] passes the monitoring criterion," as required by claims 1 and 9 of the '571 patent.  In addition, Mitek has never had any intent to cause its customers to infringe the '571 patent.

51.     As a result of the acts described in the preceding paragraphs, there exists a controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

52.     A judicial declaration is necessary and appropriate so that Mitek and its customers may ascertain their rights regarding the '571 patent.

### COUNT IV

### DECLARATORY JUDGMENT OF NON-INFRINGEMENT
### OF U.S. PATENT NO. 9,818,090

53.     Plaintiff realleges the foregoing paragraphs as if fully set forth herein.

54.     Mitek, through the manufacture, use, and/or sale of Mitek's MiSnap™ and related remote deposit technology, has not and does not infringe, induce infringement, or contribute to the infringement of any enforceable claim of the '090 patent, either literally or under the doctrine of equivalents.

55.     Mitek's customers' use of Mitek's MiSnap™ and related remote deposit technology has not and does not infringe, induce infringement, or contribute to the infringement of any enforceable claim of the '090 patent, either literally or under the doctrine of equivalents.

56.     For example, Mitek's MiSnap™ and related remote deposit technology do not infringe at least because they do not, "when the monitoring criterion is determined to be satisfied, control[] the image capture device to capture an image depicting the target document in the field of view of the image capture device," as required by claims 1 and 11 of the '090 patent.  In addition, Mitek has never had any intent to cause its customers to infringe the '090 patent.

57.     As a result of the acts described in the preceding paragraphs, there exists a controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

58.     A judicial declaration is necessary and appropriate so that Mitek and its customers may ascertain their rights regarding the '090 patent.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment as follows:

A.      That Mitek and its customers have not infringed, either directly or indirectly, any valid and enforceable claim of the '779 Patent through the manufacture, use, and/or sale of Mitek's products, software, or technology;

B.      That Mitek and its customers have not infringed, either directly or indirectly, any valid and enforceable claim of the '517 Patent through the manufacture, use, and/or sale of Mitek's products, software, or technology;

COMPLAINT FOR DECLARATORY JUDGMENT

1      C.      That Mitek and its customers have not infringed, either directly or
indirectly, any valid and enforceable claim of the '090 Patent through the
manufacture, use, and/or sale of Mitek's products, software, or technology;

D.      That Mitek and its customers have not infringed, either directly or
indirectly, any valid and enforceable claim of the '571 Patent through the
manufacture, use, and/or sale of Mitek's products, software, or technology;

E.      That Mitek is a prevailing party and that this is an exceptional case,
awarding Mitek its costs, expenses, disbursements, and reasonable attorneys' fees
under 35 U.S.C. § 285, and all other applicable statutes, rules, and common law; and

F.      That Mitek be granted such other and further relief as the Court deems
just and proper.

## JURY DEMAND

Mitek hereby demands a jury trial on all issues and claims so triable.


DATED:  November 1, 2019      QUINN EMANUEL URQUHART &
SULLIVAN, LLP


By /s/ *Claude M. Stern*
    Claude M. Stern
    Brian E. Mack
    Attorneys for Plaintiff Mitek Systems, Inc.

COMPLAINT FOR DECLARATORY JUDGMENT