## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | | |
|---|---|---|
| MITEK SYSTEMS, INC., | § | |
| | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| | § | |
| v. | § | CIVIL ACTION NO.  2:20-CV-00115-JRG |
| | § | |
| UNITED SERVICES AUTOMOBILE | § | |
| ASSOCIATION, | § | |
| | § | |
| | § | |
| *Defendant.* | § | |

## ORDER

Before the Court is United Services Automobile Association's ("USAA") Notice of Motion and Motion to Dismiss or Transfer (the "Motion"). (Dkt. No. 19.) The Court conducted a hearing and heard oral argument on the Motion on July 16, 2020. Having considered the Motion, the related briefing, the relevant authorities, and the oral argument, the Court is of the opinion that the Motion should be and hereby is **GRANTED**.

## I.    BACKGROUND

On November 1, 2019, Mitek Systems, Inc. ("Mitek") filed a Complaint seeking Declaratory Judgement of non-infringement of four of USAA's patents in the Northern District of California. (Dkt. No. 1.) USAA filed the present Motion requesting dismissal for lack of subject matter jurisdiction and/or transfer of the case to this Court. (Dkt. No. 19.) The Northern District of California granted the request to transfer, in light of related litigation between USAA and Wells Fargo in this Court. *Mitek Systems, Inc. v. United Services Automobile Assoc.*, Case No. 3:19-cv-7223, (Dkt. No. 45). The Northern District of California deferred ruling on USAA's

12(b)(1) motion to dismiss for lack of subject matter jurisdiction, which motion this Court now takes up. *Id.*

## II.   LEGAL SECTION

"The party asserting jurisdiction bears the burden of proof on a 12(b)(1) motion to dismiss." *Life Partners Inc. v. United States*, 650 F.3d 1026, 1029 (5th Cir. 2011). "In assessing jurisdiction, the district court is to accept as true the allegations and facts set forth in the complaint." *Choice Inc. of Tex. v. Greenstein*, 691 F.3d 710, 714 (5th Cir. 2012). A 12(b)(1) motion will not be granted "unless it appears certain that the plaintiffs cannot prove any set of facts in support of their claim which would entitle them to relief." *Life Partners*, 650 F.3d at 1029.

The Declaratory Judgment Act provides that, "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 126 (2007) (quoting 28 U.S.C. § 2201(a)). "When considering a declaratory judgment action, a district court must engage in a three-step inquiry." *Orix Credit All., Inc. v. Wolfe*, 212 F.3d 891, 895 (5th Cir. 2000). The court must ask (1) "whether an 'actual controversy' exists between the parties" in the case; (2) whether it has authority to grant declaratory relief; and (3) whether "to exercise its broad discretion to decide or dismiss a declaratory judgment action." *Id*.

## III.   ANALYSIS

### a. The Court Lacks Subject Matter Jurisdiction Over Mitek's Declaratory Judgment Claim.

Mitek's basis for subject matter jurisdiction rests on two things: (1) the litigation between USAA and Wells Fargo, a customer of Mitek; combined with (2) USAA's letters to Mitek customers and indemnification demands to Mitek stemming therefrom.  USAA argues that these

events fail to establish subject matter jurisdiction over Mitek's claim because Mitek could have intervened in the litigation between USAA and Wells Fargo months ago but consciously chose not to; and USAA's letters to Mitek's customers, without more, are insufficient to establish an immediate injury or threat of injury.

### 1. *USAA v. Wells Fargo Action*

Mitek's primary argument is that a case or controversy exists between Mitek and USAA because Mitek apprehends imminent litigation in light of USAA's litigation against Wells Fargo. (Dkt. No. 24 at 6–7; *see also* Complaint, Dkt. No. 1 ¶¶ 11–12; *U.S. Automobile Assoc'n v. Wells Fargo Bank, N.A.*, No. 2:18-cv-245 ("Wells Fargo Case").) Mitek argues that Wells Fargo is one of Mitek's largest customers, and that in the Wells Fargo Case, USAA specifically accused Mitek's product. (Dkt. No. 24 at 3–4.) Further, Mitek asserts, the Wells Fargo Case "buoyed" USAA to release "[a] public warning to the industry to 'be on alert'" of USAA's patents. (Dkt. No. 24 at 4, 7.) Accordingly, Mitek argues that it has suffered, and continues to suffer, an injury-in-fact sufficient to constitute a case or controversy. (*Id.* at 6.)

USAA asserts that Mitek's allegations regarding the Wells Fargo Case do not support jurisdiction because Mitek fails to establish a presently existing controversy—merely the possibility of one in the future. This is supported by Mitek's election not to intervene in the Wells Fargo Case months ago. (Dkt. No. 19 at 8.) Further, USAA contends, Mitek has no injury or threat of injury to itself because Mitek's products on their own would not infringe USAA's patents, as repeatedly testified to in the Wells Fargo trial. (*Id.* at 8–9.)

The most reasonable course of action to address Mitek's apprehension of litigation brought on by the Wells Fargo Case would have been for Mitek to intervene in that litigation. As Mitek points out, its products were supplied to Wells Fargo, and were repeatedly referenced by USAA's

counsel throughout the case and the ensuing jury trial.  (Dkt. No. 24 at 3–4.)  Mitek was fully aware of the Wells Fargo Case and USAA's allegations against its Mi-Snap product therein— indeed, Mitek participated in the Wells Fargo trial by providing a corporate representative who testified by deposition and in-person at trial.   (Dkt. No. 19-1; Dkt. No. 19-2 at 92:1–18.) Nevertheless, despite this full awareness of the Wells Fargo Case, Mitek elected not to seek to formally intervene in the Wells Fargo Case, where it could have best pursued the declaratory relief it now seeks.  Despite Mitek's repeated fears, Wells Fargo never asserted any indemnification obligation owed it by Mitek.  (Dkt. No. 19-1, 19-6.)

Reasonable apprehension of suit remains a relevant consideration in determining whether a case or controversy exists between the parties, but it is no longer the primary or sole consideration. *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118 (2007); *see also Streck, Inc. v. Research & Diagnostic Systems, Inc.*, 665 F.3d 1269, 1282 (Fed. Cir. 2012).  Mitek alleges that the Wells Fargo Case "add[ed] to" its apprehension of imminent litigation from USAA  (Dkt. No. 58 at 44:11–12), and that its delay in seeking a declaratory judgment should not be counted against its apprehension.  (*Id.* at 45:12–46:1; 46:12–18.)  The Court, however, is persuaded that Mitek sitting on its hands during the Wells Fargo Case and neglecting to intervene is probative (and perhaps the best indicator) as to of any actual apprehension Mitek felt with regard to litigation by USAA.  While Mitek alleges that the Wells Fargo Case compounded its fear of suit by USAA, that fear was never large enough to convince Mitek to intervene in that suit.

Instead, the evidence indicates that the Wells Fargo Case gave Mitek every reason to think that USAA does *not* intend to pursue any claim for patent infringement against Mitek.  The repeated testimony given during the Wells Fargo trial was that without significant customization by Wells Fargo, the Mitek Mi-Snap product does not infringe the asserted patent.  (Dkt. No. 19-4

at 41:10–14; *see also* Dkt. No. 19-4 at 25:14–27:5, 85:13–15, 173:10–174:5.)  This is a notable data-point in determining the degree of true apprehension Mitek had at the time, not the degree of apprehension it now professes in hindsight.

The timing of events in this context is informative.  Jury selection in the Wells Fargo case commenced on October 30, 2019.  *U.S. Automobile Assoc'n v. Wells Fargo Bank, N.A.*, Case No. 2:18-cv-245 (E.D. Tex. 2018), Dkt. No. 296.  Just two days later—***in the middle of the jury trial in the Wells Fargo Case***—Mitek filed the present declaratory judgment action in the Northern District of California.  Three days later, on November 4, 2019, Mitek's corporate representative ***testified at trial in the Wells Fargo Case***.  (*See* Dkt. No. 19-2.)  This was the perfect time for Mitek to have defended its Mi-Snap product by intervening in the Wells Fargo Case.  *DataTern*, 755 F.3d at 904 ("A case has already been filed against these customers in the Eastern District of Texas.  Appellees cannot seek a declaration from a New York court on behalf of customers they must indemnify where a suit against these very same customers on the same issues was *already* underway in a Texas court.") (emphasis in original) (citing *Futurewei Techs., Inc. v. Acacia Research Corp.*, 737 F.3d 704, 708 (Fed. Cir. 2013) ("When two actions that sufficiently overlap are filed in different federal district courts, one of infringement and the other for declaratory relief, the declaratory judgment action, if filed later, generally is to be stayed, dismissed, or transferred to the forum of the infringement action.") (citations omitted)).

Mitek alleges that it had a reasonable apprehension of suit following the Wells Fargo Case because USAA was making broad, public statements that USAA believed it invented the field in which Mitek practices.  (*See* Dkt. No. 58 at 36:6–9; Dkt. No. 24 at 7.)  To constitute a case or controversy, a dispute between the parties must be "definite, [ ] concrete, . . . real and substantial." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007).  Mitek reads too much into the

statements by USAA.   On their face, these statements constitute, at best, nothing more than premature speculation about a future dispute.  Tellingly, none of the statements Mitek points to specifically identify Mitek by name.  *Id.* (holding that the dispute must "[t]ouch the legal relations of parties having adverse legal interests") (citations omitted) (internal quotations omitted). Contrary to Mitek's arguments, the actual statements of USAA do not indicate a developed and present intention to sue players within the industry.  *Id.* (the facts alleged must show a dispute "of sufficient immediacy and reality to warrant the issuance of a declaratory judgment").

Accordingly, the Court concludes that the Wells Fargo Case could not have provoked in Mitek a reasonable apprehension of suit by USAA.

### 2. *Licensing Letters*

Mitek also argues that its customers have received enforcement letters from USAA, and that its customers have claimed that Mitek "may have a legal obligation to indemnify them." (Dkt. No. 24 at 6; *see also* Complaint, Dkt. No. 1 ¶¶ 13–14.)

USAA counters that Mitek's alleged third-party letters do not cure the lack of subject matter jurisdiction because: they were sent two years ago; only mention the currently at-issue patents in an attachment of over fifty patents—if they are mentioned at all; do not contain allegations of infringement; and were directed to third parties.

Suits against customers for direct infringement are insufficient to constitute a case or controversy. *Microsoft Corp. v. DataTern, Inc.*, 755 F.3d 899, 904 (Fed. Cir. 2014).  Here, Mitek argues that a tenuous form of communication to its customers—licensing letters—justify the present declaratory judgment action.  The Court is not convinced that these letters create a justiciable controversy.  Despite continued references to "letters," only one such letter was ever presented to the Court.  That letter is from counsel for USAA to Mission Federal Credit Union

("Mission"). (*See* Dkt. No. 1-1.) The letter, written by licensing counsel, proposes that Mission is "directly reaping the benefits of USAA's inventions" and suggests that Mission "take a license to USAA's patent portfolio covering the technology." (*Id.* at 2.) The Mission letter neither threatens litigation nor calls out any particular patent as being infringed. The letter fails to provide claim charts, and does not indicate that any infringement analysis has occurred. Neither does it specifically call out Mitek, or identify particular products as allegedly infringing. The Mission letter accuses no particular product of direct infringement, and it contains no indication of infringement claims against Mitek's products.

Although suits against customers combined with demands for present indemnification obligations may be sufficient to convey standing when combined with viable indemnification obligations, mere requests for indemnification may fall short. *See DataTern*, 755 F.3d at 904. In the present action, Wells Fargo disclosed that it did not have an indemnification agreement with Mitek. (Dkt. No. 19-6 at 8.) Although Mitek alleges such is subject to dispute, Mitek has not come forward with any evidence that such an obligation exists. Mitek has not pled that any such obligation exists. (Dkt. No. 24 at 14; Dkt. No. 1.) Instead, Mitek maintains that it need not admit it has an indemnification obligation for this Court to maintain jurisdiction over its declaratory judgment action. (Dkt. No. 58 at 23:11–15.) The Court disagrees. *See DataTern*, 755 F.3d at 904 (declining to find a basis for jurisdiction over a declaratory judgment action when the declaratory judgment plaintiffs had not shown any meritorious requests for indemnification).

Mitek, in its Supplemental Brief in Opposition to USAA's Motion to Dismiss,[1] argues that a basis for the present action has arisen because USAA has filed suit against another Mitek

---

[1] In its Supplemental Brief, Mitek also argues that USAA's Motion should be denied because USAA and Wells Fargo settled the litigation between them, and therefore "those cases have no continued relevance to this declaratory-judgment action." (Dkt. No. 60-1.) As mentioned *supra*, "post-complaint facts cannot create jurisdiction

customer, PNC Bank N.A., in which the customer has tendered an indemnification demand and USAA has served a subpoena on Mitek for documents and source code.  (Dkt. No. 60-1.) However, as Mitek concedes, the analysis of reasonable apprehension needs to be made at the time its declaratory judgment suit was filed.  (Dkt. No. 58 at 35:14–16.)  "[A] declaratory judgment plaintiff must plead facts sufficient to establish jurisdiction at the time of the complaint, and post-complaint facts cannot create jurisdiction where none existed at the time of filing."  *DataTern,* 755 F.3d at 906 (citations omitted); *see also Streck*, 665 F.3d at 1282 ("The party seeking a declaratory judgment must establish that jurisdiction existed at the time the claim for declaratory relief was filed and that it has continued since.") (quoting *Benitec Austl., Ltd. v. Nucleonics, Inc.*, 495 F.3d 1340, 1344 (Fed. Cir. 2007)) (internal quotations omitted).

Accordingly, the Court has not been presented with probative evidence that would rise to the level of creating a justiciable controversy between Mitek and USAA at the time the present declaratory judgment action was filed.

### b.   Even if the Court had Subject Matter Jurisdiction, it Would Decline it.

"When considering a declaratory judgment action, a district court must" determine whether "to exercise its broad discretion to decide or dismiss a declaratory judgment action."  *Orix Credit*, 212 F.3d at 895.  The Declaratory Judgment Act provides that a court "*may* declare the rights and other legal relations of any interested party."  28 U.S.C. § 2201(a).  It has long been recognized that district courts have "unique and substantial discretion in deciding whether to declare the rights of litigants."  *MediImmune*, 549 U.S. at 136 (citations omitted).  Even if the Court's determination that subject matter jurisdiction is lacking were later set aside, the Court would similarly and for

---

where none existed at the time of filing," and therefore consideration of this development does not impact or change the outcome herein. *DataTern*, 755 F.3d at 906.

the same reasons exercise its discretion and decline to exercise jurisdiction over Mitek's declaratory judgment action.

## IV.   CONCLUSION

For the foregoing reasons, the Court **GRANTS** USAA's motion pursuant to Rule 12(b)(1) to dismiss the present action in its Notice of Motion and Motion to Dismiss or Transfer (the "Motion").  (Dkt. No. 19.)  Accordingly, the present action is **DISMISSED FOR LACK OF JURISDICTION**.

**So ORDERED and SIGNED this 28th day of April, 2021.**

_____
RODNEY  GILSTRAP
UNITED STATES DISTRICT JUDGE